**IN THE COURT OF APPEALS OF IOWA**

No. 15-1069
Filed September 10, 2015

**IN THE INTEREST OF S.M. AND V.M.,**
**Minor Children,**

**R.M., Father,**
**Appellant.**

_____

Appeal from the Iowa District Court for Woodbury County, Mary L. Timko, Associate Juvenile Judge.

A father appeals the termination of his parental rights to two children, born in 2013 and 2014. **AFFIRMED.**

Zachary Hindman of Bikakis, Mayne, Arneson, Hindman & Hisey, Sioux City, and Brian Buckmeier of Buckmeier & Daane Lawyers, P.C., Sioux City, for appellant father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Patrick Jennings, County Attorney, and Diane Murphy, Assistant County Attorney, for appellee State.

Stephanie Parry of Forker & Parry, Sioux City, for appellee Mother.

Joseph Kertels of the Public Defender's Office, Sioux City, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**VAITHESWARAN, P.J.**

A father appeals the termination of his parental rights to two of his children, born in 2013 and 2014.  He contends (1) the State failed to prove the grounds for termination cited by the juvenile court, (2) the juvenile court should have afforded him an additional six months to reunify with his children, and (3) termination was not in the children's best interests.

Our de novo review of the record reveals the following facts.  The Department of Human Services became involved with the family when the youngest child was born with amphetamines in her system.  The child's mother admitted to using methamphetamine with the father on the date of delivery.

The parents agreed to a safety plan.  The mother and the youngest child moved from the hospital to a women's and children's center.  The older child and her half-siblings stayed with a family friend.

The father underwent a drug abuse assessment, which identified his potential for relapse as "high."  He began attending an extended outpatient drug treatment program.  Initially, his attendance was consistent.  Later, his participation dropped off "due to transportation issues and his job."  He also failed to submit several urine samples for testing.

Five months after the youngest child's birth, the father tested positive for methamphetamine in his system.  His therapist reported he had stopped attending treatment a month earlier.

The juvenile court formally removed the children from the parents' care.  Following a home study, the children were placed with the father's aunt and uncle.

Within approximately two months of the removal, the father was arrested for domestic assault. A records check revealed four prior convictions for domestic assault. The father was discharged from the outpatient drug treatment program he had sporadically attended. Ultimately, he was convicted of aggravated domestic assault and began serving a two-year prison sentence. He remained incarcerated at the time of the termination hearing.

*(1)* The juvenile court terminated the father's parental rights pursuant to two statutory provisions. *See* Iowa Code § 232.116(1)(b) (requiring proof of abandonment), (h) (requiring proof child cannot be returned to parent's custody) (2015). On appeal, the father challenges the evidence supporting the abandonment ground but concedes the "children could not have been returned to his care immediately, since he was in prison."

We may affirm if we find clear and convincing evidence to support either of the statutory grounds. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). Given the father's incarceration, we conclude section 232.116(1)(h) was satisfied.

*(2)* The father sought six additional months to reunify with the children. *See* Iowa Code § 232.104(2)(b). The juvenile court expressed reservations about his ability "to assume a parental role following his release from prison within a reasonable period of time." We too have reservations.

The father was not slated to discharge his sentence until three months after the termination hearing. He admitted he would have to spend an additional three months in a halfway house. At a minimum, then, he would not be living independently for at least six months.

Following his youngest child's birth, the father had several months to comply with substance abuse services. The father squandered the opportunity. He also committed the same crime that resulted in four prior convictions, leaving significant doubts about his willingness to reform. When asked how long the children should have to wait for their parents, the father responded "[s]houldn't be no time." Based on this record, we conclude additional time for reunification was not warranted.

*(3)* Termination must be in the children's best interests. *See In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). While we do not question the father's love for his children, there is simply no basis for concluding they would be safe in his care.

The father's drug use and assaults placed the children at severe risk of physical and emotional harm. As for the bond these young children once shared with the father, the department social worker assigned to the case testified they "had no real knowledge or remembrance of their father." We conclude termination was in the children's best interests.

We affirm the termination of the father's parental rights to these children.

**AFFIRMED.**